1

2

3

4

5

6               UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                      AT SEATTLE

8    OLEG MANYAK,

9              Plaintiff,

10        v.                                  Case No.  C09-1297RSL

11   BLACKROCK, INC., as PLAN                 ORDER DENYING PLAINTIFF'S
     ADMINISTRATOR OF THE                     MOTION FOR SUMMARY
12   BLACKROCK EMPLOYEE WELFARE               JUDGMENT AND ENTERING
     PLAN, *et al.*,                          SUMMARY JUDGMENT FOR
13                                            DEFENDANTS
               Defendants.
14

15

16

17                      **I.  INTRODUCTION**

18
          This matter comes before the Court on a motion for summary judgment filed by
19
     plaintiff Oleg Manyak, the beneficiary of a voluntary accidental death and
20
     dismemberment insurance policy (the "Plan") provided by his employer, defendant
21
     BlackRock, Inc.  Defendant Metropolitan Life Insurance Company ("MetLife") is an
22
     administrator of the Plan.  The Plan includes a benefit based on the accidental death of a
23
     dependant child.  Plaintiff's twenty-year-old son died suddenly after undergoing surgery
24

25

26   ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
     AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 1

1  at Swedish Hospital in July 2008.

2  Plaintiff asserts a claim under the Employee Retirement Income Security Act of

3  1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Plaintiff has filed this action pursuant to 29

4  U.S.C. § 1132(a)(1)(B), seeking a declaration of his right to benefits.

5  At plaintiff's request, the Court heard oral argument in this matter on May 11,

6  2010. For the reasons set forth below, the Court denies plaintiff's motion and enters

7  summary judgment for defendants.

8

9  **II.  DISCUSSION**

10 **A.     Background Facts.**

11 Plaintiff's son, Mikhail Manyak, underwent dental surgery at Swedish Hospital to

12 correct a malocclusion.  A "malocclusion" means a "[m]alposition of teeth and/or an

13 imperfect relationship between the mandibular and maxillary teeth and/or dental arches."

14 Plaintiff's Motion at p. 2 (citing Taber's Cyclopedic Medical Dictionary 1398 (21st ed.

15 2009)).

16

17 The surgery and recovery were uneventful until the patient began exhibiting

18 symptoms of an allergic reaction.  Efforts to maintain his airway were unsuccessful, and

19 Mikhail Manyak suffered an anoxic brain injury.  Life support was discontinued a few

20 days later, resulting in death.

21 Under the Plan, MetLife will pay the beneficiary benefits upon the death of a

22 "dependant child," which Mikhail Manyak undisputedly was.  Plaintiff filed a claim for

23 benefits, which MetLife denied.  It cited the Plan's exclusion, which provides, "We will

24 not pay benefits under this section for any loss caused or contributed to by . . . physical or

25

26 ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 2

1  mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity."

2  Declaration of Mel Crawford, (Dkt. #9) ("Crawford Decl."), Ex. 1 at p. 35.  The denial

3  letter noted,

> The Autopsy Report states "This 20 year old male died as a result of anoxic brain
> injury status post clinical diagnosis of anaphylactic reaction following a
> medication administration.  The manner of death is complication of therapy."  The
> medical records provided concur that Mr. Manyak underwent mandibular
> advancement surgery and developed anaphylactic reaction to medication, resulting
> in hypoxia that led to cardiac arrest.

Crawford Decl., Ex. 3.  In response to plaintiff's subsequent appeal, MetLife stated in a

letter, "[T]he malocclusion was an infirmity (ailment) that required surgery and it was the

treatment of this infirmity that caused his demise.  As stated above and in our original

denial letter, as the cause of death was the result of the diagnosis or treatment of an illness

or infirmity, we must uphold the denial for Dependent Voluntary Accidental Death

benefits."  Id., Ex. 4.

**B.      Standard of Review.**

Plaintiff concedes, as he must, that the Plan vests the administrator with discretion,

so the denial of benefits is reviewed for an abuse of discretion.  Metro. Life Ins. Co. v.

Glenn, __ U.S. __, 128 S. Ct. 2343, 2348 (2008); see also Crawford Decl., Ex. 2 at p. 73

(Plan language granting discretion).  Under an abuse of discretion standard, a plan

administrator's decision must be upheld "if it is based upon a reasonable interpretation of

the plan's terms and was made in good faith."  Bendixen v. Standard Ins. Co., 185 F.3d

939, 944 (9th Cir. 1999).

Because MetLife both evaluates claims for benefits and pays the benefits for

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 3

1  approved claims, it has a structural conflict of interest, which "must be weighed as a

2  factor in determining whether there was an abuse of discretion." Glenn, 128 S. Ct. at

3  2350 (internal citation and quotation omitted).  "The weight the court assigns to the

4  conflict factor depends on the facts and circumstances of each particular case." Montour

5  v. Hartford Life & Accident Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009); id. at 631

6  (explaining that the weight given to the conflict is adjusted "based on the degree to which

7  the conflict appears improperly to have influenced a plan administrator's decision.").  In

8  this case, there is no evidence that the conflict actually tainted the decisionmaking

9  process. See, e.g., Montour, 588 F.3d at 631 (explaining that a court should review the

10  decision with skepticism if there is evidence that the conflict may have tainted the

11  decisionmaking process).  Nor is there any evidence of the circumstances that the *Glenn*

12  Court explained could show a higher likelihood that the conflict affected the benefits

13  decision, including a history of biased claims administration, encouraging the claimant to

14  argue to the Social Security Administration ("SSA") that she could do no work (then

15  receiving the bulk of the benefits of her success in doing so), ignoring the SSA's finding

16  that the claimant could do no work, emphasizing certain medical reports that favored the

17  denial of benefits while deemphasizing reports that suggested a contrary conclusion, or

18  failing to provide its independent vocational and medical experts with all of the relevant

19  evidence. Glenn, 128 S. Ct. at 2351-52.  In the absence of any evidence that the conflict

20  tainted the decisionmaking process or affected the final decision, the Court gives the

21  conflict of interest little weight.

22         In his reply memorandum, plaintiff contends that the Court should apply *de novo*

23

24

25  ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
    AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 4

26

1  review because defendants' response contained an additional contention supporting the

2  denial of benefits that was not contained in the denial letters.  Specifically, defendants

3  now contend that Mikhail Manyak's death was also caused "by the illness or infirmity of

4  his severe allergy to medications."  Defendants' Response at p. 13.  The assertion of the

5  new justification, however, does not justify the application of *de novo* review.  In the

6  cases on which plaintiff relies, *de novo* review was conducted because the administrator

7  relied on a new justification in its final denial.  See Saffron v. Wells Fargo & Co. Long

8  Term Disability Plan, 552 F.3d 863, 872 (9th Cir. 2008); Abatie v. Alta Health & Life

9  Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006).  Advancing a new justification in the final

10  stage of review is problematic because it appears to offer "an excuse to reject the claim

11  rather than conducting an objective evaluation."  Saffron, 552 F.3d at 872.  In contrast, in

12  this case, the administrator's stated reasons for the denial did not substantively vary from

13  the initial denial to the final denial.  Nor is there any evidence that the administrator failed

14  to conduct a fair, objective review.  Instead, the newly-minted argument appears to be the

15  result of a misguided litigation strategy.  Furthermore, because plaintiff had no

16  opportunity to address the new contention during the review process, the Court will not

17  consider it for the first time.  29 U.S.C. § 1133(1) (providing that the administrator must

18  provide a plan participant with adequate notice of the reasons for denial); 29 U.S.C. §

19  1133(2) (providing that the administrator must provide a full and fair review); 29 C.F.R. §

20  2560.503-1(g)(1), (h)(2).[1]  Because the evidence presented is sufficient to uphold the

21  ────────────

22  [1] If the Court were to consider the new justification, the appropriate course would
be to allow plaintiff an opportunity to rebut it.  See, e.g., Saffron, 552 F.3d at 872

1   administrator's decision on its stated grounds, there is no need to allow defendants to

2   advance and for plaintiff to rebut the newly-minted justification.  Accordingly, the Court

3   will review for abuse of discretion.

4           The usual summary judgment standards do not apply in an ERISA case: "[W]here

5   the abuse of discretion standard applies in an ERISA benefits denial case, a motion for

6   summary judgment is merely the conduit to bring the legal question before the district

7   court and the usual tests of summary judgment, such as whether a genuine issue of

8   material fact exists, do not apply."  Nolan v. Heald College, 551 F.3d 1148, 1154 (9th

9   Cir. 2009) (internal citation and quotation omitted).  For that reason, defendants

10  contended in their response to plaintiff's motion that if the Court denies plaintiff's

11  motion, it should grant summary judgment in favor of defendants.  Plaintiff did not

12  respond to that argument in its reply memorandum.  Instead, plaintiff argued during oral

13  argument that if the Court denies the motion, it cannot grant summary judgment in

14  defendants' favor because they did not cross move.  Even when a party has not cross

15  moved for summary judgment, the Court may enter summary judgment in its favor if the

16  other party has had a "full and fair opportunity to ventilate the issues involved in the

17  matter."  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).  The principle

18  also applies in ERISA cases.  See, e.g., Hoskins v. Metro Life Ins. Co., 551 F. Supp.2d

19  942, 946 (D. Ariz. 2008); Greenwood v. Hartford Life Ins. Co., 471 F. Supp.2d 1049,

---

(explaining that on remand, the district court was required to give the claimant an
opportunity to present evidence on the issue that MetLife newly raised in its final denial
letter).

1053 (C.D. Cal. 2007).  In this case, plaintiff has had a full and fair opportunity to litigate

the issues, particularly because the Court has not considered defendants' new arguments.

Accordingly, the Court may grant summary judgment to either party.

**C.     Analysis.**

Applying the abuse of discretion standard, the Court must determine whether

defendants' decision was based upon a reasonable interpretation of the Plan's terms.

Defendants argue that plaintiff's death was not an "accident," and even if it had been, the

exclusion bars coverage because the death was "caused or contributed to by . . . the

treatment of [an] illness or infirmity."  Crawford Decl., Ex. 2 at p. 35.  Plaintiff counters

that the exclusion does not apply because Mikhail Manyak's condition was not an illness

or infirmity.  Under ERISA, courts "interpret terms in ERISA insurance policies in an

ordinary and popular sense as would a person of average intelligence and experience."

Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1125 (9th Cir. 2002) (internal citation and

quotation omitted).  When, as here, a plan does not define a term, courts "look to the

dictionary definition to determine the ordinary and popular meaning."  Vaught v.

Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 628 (9th Cir. 2008).  Plaintiff

notes that what it refers to as a standard medical dictionary defines an illness as "sickness,

disease," or "an ailment."  Taber's Cyclopedic Medical Dictionary 1152 (21st ed. 2009).

Webster's Third New International Dictionary (2002) defines an "ailment" as "a bodily

sickness, disorder, or chronic disease," and, in turn, a "disorder" is defined as "an

abnormal physical or mental condition," and is synonymous with "sickness, ailment, or

malady."  Similarly, Webster's Third New International Dictionary (2002) includes

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 7

"malady" as a synonym of both illness and infirmity; malady is defined as a "disease or disorder of the body."

Applying those definitions, plaintiff's condition is readily understood as an illness or infirmity, particularly when the terms are defined to include a disorder or an abnormal physical condition.  Plaintiff does not argue or present any evidence to show that a malocclusion is a normal condition or one that is typically found in the human body.  In the medical records, on a form seeking information about the patient's "history of present *illness*," the physician wrote, "This patient is being followed regards to his malocclusion. He is currently admitted for the surgical phase of his therapy."  Crawford Decl., Ex. 1 at MetLife 0153 (emphasis added).  In the same document, the physician notes, "Oral examination demonstrates severe mandibular horizontal deficiency and no evidence of joint dysfunction."  Id.  The medical records, and the fact that a surgery was needed, show that plaintiff had an "illness" or "infirmity."  Similarly, other cases have described malocclusion as a deformity of the jaw, which falls squarely within the definition of an illness or infirmity.  See, e.g., Larson v. Providence Health Plan, Case No. 08-929-JO, 2009 WL 562815 at *1 n.3 (D. Or. March 2, 2009) (explaining, "Malocclusion of the jaw is a jaw deformity that causes degeneration of the functionality and condition of the jaw joint and permanent wear of the teeth.").[2]  Moreover, the patient's death resulted from

---

[2] See also Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305 (4th Cir. 2002), abrogated on other grounds by Carden v. Aetna Life Ins. Co., 559 F.3d 256 (4th Cir. 2009) (noting, "Malocclusion of the mandible is a serious condition affecting the teeth, jaw, and facial structure.  It involves the malposition of the teeth, which results in pain, degeneration, and jaw clicking.  If left untreated, malocclusion of the mandible can also affect a person's ability to eat, speak, and maintain good oral hygiene.") (citing

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 8

1    therapy – the surgery and medication – related to the treatment of that condition.[3]

2        Plaintiff contends that his son's condition was minor: he had what plaintiff

3    describes as an "overbite."  The Plan's exclusion is not defined according to the severity

4    of the condition.  Even if severity were relevant to the determination of whether an illness

5    or infirmity existed, plaintiff offers no medical evidence in support of his position that his

6    son's condition was minor or not properly understood as an illness or infirmity.  For

7    example, there is no evidence in the record that the condition was temporary or that the

8    surgery was merely cosmetic.  The fact that the medical records note the patient's

9    condition was "severe" and that surgery was needed to correct the problem belie

10   plaintiff's assertion.

11

12       The death of plaintiff's young son is, without a doubt, a terrible tragedy.  However,

13   defendants' decision was based upon a reasonable interpretation of the Plan's terms and

14   was made in good faith.  Accordingly, defendants did not abuse their discretion.

15   ### III.  CONCLUSION

16       For all of the foregoing reasons, the Court DENIES plaintiff's motion for summary

17

18   _____

19   Dorland's Illustrated Medical Dictionary 982; World's Craniofacial Foundation,
     Deformities of the Jaw [website listed]).

20

21   [3] During oral argument, plaintiff argued for the first time that a different exclusion
     supports his claim: the Plan contains an exclusion for a loss caused by "the voluntary

22   intake or use by any means of: any drug, medication or sedative, unless it is taken or
     prescribed by a Physician . . . ."  Crawford Decl., Ex. 1 at p. 35.  However, the fact that

23   the loss is not excluded by that exclusion does not mean that it is otherwise covered by
     the Plan.  Furthermore, the death in this case was not caused simply by ingestion of a

24   prescribed medication.  It occurred as a complication of, and during the post-operative
     recovery from, a surgery to treat an illness or infirmity as set forth above.

25

26   ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
     AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 9

1  judgment (Dkt. #8) and GRANTS summary judgment in favor of defendants.  The Clerk

2  of the Court is directed to enter judgment in favor of defendants and against plaintiff.

3

4          DATED this 12th day of May, 2010.

5

6

7                                          _____
                                           Robert S. Lasnik
8                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
    AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS - 10